Henry **OBRON**, d/b/a Advance Bag and Burlap Company, Plaintiff,

v.

**UNION CAMP CORPORATION** and Bemis Company, Inc., Defendants.

Civ. A. No. 31810.

United States District Court, E. D. Michigan, S. D.

March 28, 1972.

See also, D.C., 324 F.Supp. 390.

Allen M. Krass, Troy, Mich., for plaintiff.

Stephen R. Lang, New York City, Edward C. Stringer, St. Paul, Minn., Fred Mallender, II, Charles F. Hosmer, Detroit, Mich., for defendants.

## MEMORANDUM OPINION

PHILIP PRATT, District Judge.

Plaintiff has instituted his suit under pertinent provisions of the Clayton Act (15 U.S.C. §§ 15 and 22) and the Sherman Act (15 U.S.C. §§ 1 and 2). Plaintiff is a jobber or wholesale dealer who purchased mesh window bags from defendant Union Camp Corporation between the years 1954 and 1967. He claims that the defendants conspired to create a monopoly in the manufacture and sale of such bags through maintaining and enforcing an invalid patent, knowing it to be invalid.

Among the defenses asserted by the defendants is that the plaintiff was not damaged by the acts of the defendants even should such acts be found to have been unlawful and in violation of Clayton and Sherman Act provisions. More specifically, the defendants rely on the "passing-on defense" and requested that the Court issue a pre-trial ruling on the viability of the "passing-on defense" in the circumstances of this case.

This Court advised counsel in an in-chambers conference of its preliminary

attitude with the qualification that factual circumstances developed at trial could result in a different, even contrary, determination.

Whereupon, counsel submitted to the Court a stipulation, a copy of which is attached hereto, requesting that this Court formalize its preliminary ruling and certify the matter to the Circuit Court of Appeals under 28 U.S.C. § 1292(b), which section provides for review of interlocutory rulings in certain circumstances.

Crucial to the stipulation and its request is that portion of the stipulation which mutually establishes that:

> "5. With respect to plaintiff's purchase of mesh window bags drop shipped to plaintiff's customers, plaintiff purchased at 5% off Union's suggested list price and resold to his customers at list."

The above factual stipulation is based on the following practice of the plaintiff: after obtaining an order from a customer for mesh window bags he would submit the order to Union and would be invoiced at Union's list price less 5%. The bags were "drop shipped", i. e. sent directly from Union to plaintiff's customer. Plaintiff would bill his customer at Union's full list price. Thus, whatever price Union imposed on the plaintiff, the plaintiff passed on to his customer plus his 5%.

The drop shipment type of sale comprised the bulk of the plaintiff's trade in mesh window bags.

### 28 U.S.C. § 1292(b) and the Propriety of its Use in the Case at Bar

■ Appeal herein is contemplated under 28 U.S.C. § 1292(b), which provides as follows:

> "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order. June 25, 1948, c. 646, 62 Stat. 929; Oct. 31, 1951, c. 655, § 49, 65 Stat. 726; July 7, 1958, Pub.L. 85–508, § 12(e), 72 Stat. 348; Sept. 2, 1958, Pub.L. 85–919, 72 Stat. 1770."

The Courts, generally, have determined that the above section is readily applicable to antitrust cases. Kraus v. Board of County Road Commissioners, 364 F.2d 919, 921 (6th Cir., 1966); Medomsley Steam Shipping Company v. Elizabeth River Terminals, Inc., 317 F. 2d 741 (4th Cir., 1963); see also 1958 U.S.Code Congressional and Administrative News, pages 5260 and 5261.

In State of Minnesota v. United States Steel, 438 F.2d 1380 (1971), the Eighth Circuit had before it just this question of the applicability of Section 1292(b) in an antitrust case involving the "passing-on defense". In that case, however, while the Court recognized the validity of the defense, declined to rule under 1292(b) because a proper evidentiary basis did not exist.

In the case at bar, there is no dispute as to any material fact involving the "passing-on defense", the parties having stipulated to all the facts necessary to decision of that issue.

Further, the parties have stipulated that not only will an immediate appeal materially advance the ultimate termination of the litigation, but will, in fact, terminate the litigation if the order appealed from is upheld.

Certainly there is no doubt but that the issue of law involved, i. e., the validity and availability of the "passing on

defense" in the circumstances of this case, would be controlling and one as to which there is substantial ground for difference of opinion.

It would appear, then, that the requirements of 1292(b) are met and that the matter should be certified to the Sixth Circuit Court of Appeals.

### Validity and Availability of the "Passing On Defense"

The touchstone case involving the "passing on defense" is Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231. In *Hanover*, the Court found a violation of Sec. 2 of the Sherman Act by United by virtue of its practice of leasing and refusing to sell certain shoe machinery. The measure of damages applied was the difference between the cost had the machine been sold and the rental paid for the machines. This amount was trebled under Section 4 of the Clayton Act.

United attempted to assert the "passing-on defense", contending that the illegal overcharge was passed on to Hanover's customers by increased prices charged for the shoes. The Court rejected that argument in the following language (pages 488–489, 88 S.Ct. page 2228):

> "Section 4 of the Clayton Act, 38 Stat. 731, 15 U.S.C. § 15, provides that any person 'who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . and shall recover three fold the damages by him sustained . . .' We think it sound to hold that when a buyer shows that the price paid by him for materials purchased for use in his business is illegally high and also shows the amount of the overcharge, he has made out a prima facie case of injury and damage within the meaning of § 4.
>
> If in the face of the overcharge the buyer does nothing and absorbs the loss, he is entitled to treble damages.

This much seems conceded. The reason is that he has paid more than he should and his property has been illegally diminished, for had the price paid been lower his profits would have been higher. It is also clear that if the buyer, responding to the illegal price, maintains his own price but takes steps to increase his volume or to decrease other costs, his right to damages is not destroyed. Though he may manage to maintain his profit level, he would have made more if his purchases from the defendant had cost him less. We hold that the buyer is equally entitled to damages if he raises the price for his own product. As long as the seller continues to charge the illegal price, he takes from the buyer more than the law allows. At whatever price the buyer sells, the price he pays the seller remains illegally high, and his profits would be greater were his costs lower."

The Supreme Court then discussed the virtual impossibility of establishing the "passing-on defense" in the face of changing economic conditions and the wide variety of factors which influence a businessman to chose an increased or different price. At page 493, 88 S.Ct. at page 2231 the Court capsuled this discussion by stating:

> "Since establishing the applicability of the passing-on defense would require a convincing showing of each of these virtually unascertainable figures, the task would normally prove insurmountable. On the other hand, it is not unlikely that if the existence of the defense is generally confirmed, antitrust defendants will frequently seek to establish its applicability. Treble-damage actions would often require additional long and complicated proceedings involving massive evidence and complicated theories."

and, subsequently, (page 494, 88 S.Ct. page 2232) concluded:

> "Our conclusion is that Hanover proved injury and the amount of its damages for the purposes of its tre-

ble-damage suit when it proved that United had overcharged it during the damage period and showed the amount of the overcharge; United was not entitled to assert a passing-on defense."

In its conclusion, however, the Supreme Court indicated that the rule that proof of overcharge coupled with proof of the amount of overcharge precludes the application of the "passing-on defense" is not to be universally and immutably imposed. Immediately following its "conclusion" above recited, the Court said:

"We recognize that there might be situations—for instance, when an overcharged buyer has a pre-existing 'cost-plus' contract, thus making it easy to prove that he has not been damaged —where the considerations requiring that the passing-on defense not be permitted in this case would not be present. We also recognize that where no differential can be proved between the price unlawfully charged and some price that the seller was required by law to charge, establishing damages might require a showing of loss of profits to the buyer."

Thus, the Court did not scrap the "passing-on defense", but restricted it, and the crucial issue here is whether the circumstances of this case create a situation where it would be easy to prove that an overcharged buyer has not been damaged.

 It appears to this Court that if there is not a "pre-existing 'cost plus' contract" present here the situation is so strikingly similar to such a contract as to dictate the allowance of the "passing-on defense".

The plaintiff here is a jobber, more graphically, the "middleman" in the sale of goods and the distinction drawn by Judge Goodrich in the District Court on the *Hanover* case is apt and impressive:

". . . where the plaintiff is a consumer of the product, rather than a middleman who resells it, he may recover the excess paid whether or not he has ultimately passed on the excess

along to his customers. . . ." 185 F.Supp. 826, 831.

The plaintiff, as a matter of fact, did not even see the product since it was shipped directly from Union to plaintiff's customers. The price plaintiff charged to his customers was the list price set by Union and the arrangement plaintiff had with Union throughout their years of dealing was that Union charged plaintiff 5% less than the list price. Actually, the arrangement more closely approaches a sales commission than a buyer-seller relationship. The only reasonable inference is that the plaintiff himself profited by any increase in prices set by defendant Union.

It is difficult to conceive of a situation where it would be easier to show that the buyer had not been damaged and makes it unnecessary to require "long and complicated proceedings involving massive evidence and complicated theories". (*Hanover, supra,* 392 U.S. page 493, 88 S.Ct. page 2231).

Since *Hanover,* the Second Circuit has had occasion to consider the "passing-on defense" in the case of State of West Virginia v. Chas. Pfizer & Co., 440 F.2d 1079 (1971). In that treble damage antitrust action, which included as party plaintiffs states maintaining a class action on behalf of consumers, one of the classes of parties to a compromise was the wholesaler-retailer class. The Court approved a compromise which recognized the applicability of the "passing-on defense" as to that class on the showing that wholesalers and retailers generally charged customers on the basis of cost plus a percentage.

"[3] Finally, the *Hanover Shoe* Court itself indicated, as quoted above, that it might well be willing to recognize, in the limited situation where the initial purchaser of the collusively priced goods resold them on a 'cost-plus' basis 'thus making it easy to prove that he has not been damaged * * * [that] the considerations requiring that the passing-on defense not be permitted in this case would

not be present' [392 U.S. at 494, 88 S.Ct. at 2232]. The record below makes it clear that the arrangements under which the wholesalers and retailers resold these products were, in virtually all cases, cost plus a set percentage mark-up (for wholesalers 16⅔% for retailers 66⅔%). Judge Wyatt therefore concluded:

> Here the antibiotics in dosage form (capsules, tablets, or other forms) were resold just as obtained from defendants. Nothing was added or changed. The mark-up was applied to the cost and the resultant price was collected from the consumer. The higher the cost, the higher the mark-up, and the higher the profit to the members of this [wholesaler-retailer] class. The situation here seems much like the " 'cost-plus' contract" referred to in the *Hanover* opinion * * * [314 F.Supp. at 746].

In regard to this point, therefore, we conclude that the district court was well within its discretion."

While the Pfizer case may be weakened in its precedential value because it involved a multi-district compromise as opposed to a trial on merits, the reasoning of the Second Circuit is not, thereby, to be taken lightly. Certainly its cogent discussion of *Hanover* and its willingness to apply the "passing-on defense" in the wholesaler-retailer drug situation is a significant barometer that this trial Court should heed.

Any analysis of the "passing-on defense" issue, however, would be incomplete without reference to another "consideration" that is inherent in the *Hanover* case, i. e.:

> "In addition, if buyers are subjected to the passing-on defense, those who buy from them would also have to meet the challenge that they passed on the higher price to *their* customers. These ultimate consumers, in today's case the buyers of single pairs of shoes, would have only a tiny stake in

a lawsuit and little interest in attempting a class action. In consequence, those who violate the antitrust laws by price fixing or monopolizing would retain the fruits of their illegality because no one was available who would bring suit against them. Treble-damage actions, the importance of which the Court has many times emphasized, would be substantially reduced in effectiveness."

In the suit at bar, the Court has no conception of the efficacy of a class action on the behalf of ultimate consumers or individual ultimate consumers nor any basis for comparison between the mass of individual buyers of shoes and the buyers of potato bags.

■ However, it is not apparent to this Court that the Supreme Court intended to establish a game of "who gets the windfall." On the contrary, it went on to recognize the viability of the "passing-on defense" in a certain type of situation. Nor does this Court find any basis for a rule that as between a seller who profited by illegal activity and the buyer who also profited, or at least suffered no loss, the windfall shall be allotted to the buyer.

Certainly the task of the Second Circuit in the *Pfizer* case was alleviated because the problem presented by the compromise was the allocation of damages to the injured parties, including the ultimate consumers represented by the various states. Yet, the element of injury is crucial and indispensable.

The thrust of *Hanover* is not the destruction of the "passing-on defense" but its restriction to situations which are easily provable. It distinguished earlier cases which had explicitly or implicitly denied the applicability of the "passing-on defense", in these words, 392 U.S. page 490, 88 S.Ct. page 2230:

> "In those cases the *possibility* that plaintiffs had recouped the overcharges from their customers was held irrelevant in assessing damages." (Emphasis supplied.)

■ Thus, it appears to this Court that the policy considerations revolving around treble damage antitrust suits are not to be considered so pervading as to override the requirement that a buyer must suffer an injury and substitute a principle of law that the fact of overcharge per se amounts to injury. To do so would subvert the plain language of Section 4 of the Clayton Act which gives a cause of action to "any person who shall be injured in his business or property . . ."

Nor, significantly, did the Supreme Court attempt to distinguish or override the line of cases referred to as the Oil Jobber cases which preceded *Hanover*. Twin Ports Oil Co. v. Pure Oil Co., 119 F.2d 747 (8th Cir. 1941), cert. denied, 314 U.S. 644, 62 S.Ct. 84, 86 L.Ed. 516 (1941); Leonard v. Socony-Vacuum Oil Co., 42 F.Supp. 369 (W.D.Wis.1942), appeal dismissed, 130 F.2d 535 (7th Cir. 1942); Northwestern Oil Co. v. Socony-Vacuum Oil Co., 138 F.2d 967 (7th Cir. 1943), cert. denied, 321 U.S. 792, 64 S. Ct. 790, 88 L.Ed. 1081 (1944); Clark Oil Co. v. Phillips Petroleum Co., 148 F. 2d 580 (8th Cir. 1945), cert. denied, 326 U.S. 734, 66 S.Ct. 42, 90 L.Ed. 437 (1945). As was said in the *Northwestern Oil Co.* case, *supra*:

"Inasmuch as plaintiff has wholly failed to prove any loss to its property or business but rather has shown, by all reasonable inferences, that the increased cost of which it complained was passed on to the ultimate consumer, the court rightfully directed a verdict for the defendant.

". . . the Clayton Act does not permit recovery by plaintiff in causes such as this for unlawful prices as such but authorizes recovery only of pecuniary loss to property or business." 138 F.2d at 971.

Finally, Judge Lord in Philadelphia Housing Authority et al. v. American Radiator and Standard Corp., D.C., 50 F.R.D. 13, aff'd 438 F.2d 1187 (3rd Cir., 1971) succinctly deals with the policy consideration in the following language which this Court adopts:

"It could therefore be argued that the Court in the instant cases does not have before it one policy consideration involved there [in *Hanover*]: that of insuring that there was at least one party which could recover against the defendant and thereby preventing the defendant from retaining the fruits of its illegality and thwarting the purpose of the antitrust laws. On this basis it could be contended that the Supreme Court's decision in *Hanover* narrowly construed, does not require dismissal of the claims of the present plaintiffs.

However the court cannot accept this argument for several reasons. First, the court laid little stress on this consideration and discussed it very briefly . . . . It is noteworthy in this connection that the Supreme Court in *Hanover* laid much less stress on . . . the doubtfulness of the economic connection between the overcharge and the level of the price charged by Hanover Shoe, Inc. to its customers as well as the difficulties of proof of such a connection." 50 F.R.D. at 29.

An order may enter in accordance with the foregoing.

## STIPULATION

The plaintiff having suggested to the court that it rule in advance of trial as to the applicability and validity of the "pass-on" defense to plaintiff's sales of mesh window bags which he purchased from the defendant Union Camp Corporation ("Union Camp"), and the Court having requested and received briefs from the parties and having been advised that there is no dispute between the parties as to the relevant facts relating to the pass-on defense, and the

Court having conferred with the parties on January 24, 1972, after full consideration the Court has advised the parties that, based on the undisputed facts presented to the Court, it is the intention of the Court to rule that the pass-on defense is valid and available to defendants with respect to plaintiff's sales of mesh window bags drop shipped to plaintiff's customers by Union Camp, and therefore, plaintiff has suffered no damage within the meaning of Section 4 of the Clayton Act (15 U.S.C. § 15) with respect to such sales. The Court expressed doubt as to the availability of the pass-on defense to sales by plaintiff of mesh window bags shipped by Union Camp to plaintiff's warehouse, and therefore reserved judgment on that issue.

In order to obtain a formal opinion and order of the Court as to the validity and applicability of the pass-on defense to the undisputed facts in this case so that plaintiff can seek immediate appeal of such order pursuant to 28 U.S.C. § 1292(b), it is stipulated and agreed by and between the attorneys for all parties hereto, as follows:

1. The parties shall submit this stipulation to the Court and shall request the Court to issue an order as to the validity and applicability of the pass-on defense and to render a written opinion in support of such order.

2. The defendants shall join with the plaintiff to request the Court to certify that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

3. The plaintiff, within ten days after the entry of such order, shall make application to the United States Court of Appeals for the Sixth Circuit to permit an appeal to be taken from such order.

The defendants favor granting the application.

4. If the order of the Court is affirmed on appeal, the plaintiff shall dismiss the action against both defendants with prejudice but without costs or attorneys' fees.

5. With respect to plaintiff's purchases of mesh window bags drop shipped to plaintiff's customers, plaintiff purchased at 5% off Union's suggested list price and resold to his customers at list.

6. Each party may rely upon or refer to plaintiff's deposition for such purpose as it deems necessary or appropriate in furtherance of the appeal contemplated herein.

7. An order substantially in the form annexed hereto may be entered without further notice to the parties.