COUNTY OF OAKLAND, by George W. KUHN, the Oakland County Drain Commissioner,—Plaintiff,

and

County of Macomb, by Thomas S. Welsh, the Macomb County Public Works Commissioner,—Intervening Plaintiff,

v.

The CITY OF DETROIT, Coleman A. Young, Charles Beckham, Nancy Allevato, as Personal Representative for the Estate of Michael Ferrantino, Darralyn Bowers, Sam Cusenza, Joseph Valentini, Charles Carson, Walter Tomyn, Vista Disposal Inc., Michigan Disposal Inc., Wayne Disposal Inc., Wolverine Disposal Inc., and Wolverine Disposal-Detroit Inc.,—Defendants.

Civ. A. No. 84–1068.

United States District Court, E.D. Michigan, S.D.

Feb. 5, 1986.

Philip G. Tannian, Detroit, Mich., David R. Getto, Southfield, Mich., Robert H. Fredericks, II, Pontiac, Mich., Brian P. Gettings, Arlington, Va., James I. Rubin, Chicago, Ill., for Oakland County—plaintiff.

James A. Smith, Detroit, Mich., William W. Misterovich, Mt. Clemens, Mich., for Macomb County—intervening plaintiff.

Edward F. Bell, Detroit, Mich., for City of Detroit.

Neil H. Fink, Detroit, Mich., for Samuel Cusenza.

S. Allen Early Jr., Detroit, Mich., for Coleman A. Young.

Richard E. Zuckerman, Troy, Mich., for Estate of Michael Ferrantino, Wayne Disposal & Charles Carson.

Deborah J. Gaskin, Detroit, Mich., for Charles Beckham.

David F. DuMouchel, Detroit, Mich., for Joseph Valentini.

N.C. Deday LaRene, Detroit, Mich., for Darralyn Bowers.

Robert H. Harrison, Birmingham, Mich., for Michigan Disposal & Walter Tomyn.

## MEMORANDUM OPINION

SUHRHEINRICH, District Judge.

On October 31, 1985, this Court granted summary judgment for defendants in this matter, finding that Oakland and Macomb Counties were not the proper parties to bring suit, 620 F.Supp. 1399. The Counties, pursuant to Fed.R.Civ.P. 59(e), have moved to alter this judgment. The Counties maintain that this Court misunderstood the relationships at issue in this case, and that these relationships confirm their standing to sue. To the contrary, the Counties' briefs, which discuss these relationships, merely serve to confirm that the Court did understand the relationships and that its granting of summary judgment was proper.

Macomb County adopts the brief of Oakland County in this motion. However, it is unclear whether the relationships between the relevant parties are identical in the two Counties. For purposes of this motion, the Court will consider that they are.

The relevant relationships, as described by the Counties, are as follows. The Counties contract with Detroit for sewage disposal. The Counties, by statute, own, operate, and administer the sewer systems that connect the sewer systems to Detroit's interceptors. The Counties determine the cost of maintaining the interceptor system, add that cost to the Detroit charges, and then bill the municipalities. The Counties then collect the aggregate fees charged to the municipalities and then pay Detroit from the specific, segregated sewer Funds maintained by the County for each of the three County sewer Districts. It is these Funds that the County seeks to protect by this suit. Similarly, the fees charged the municipalities by the County are paid by the municipalities from their own segregated sewer funds supported exclusively by user fees.

The conclusion that plaintiffs wish to draw from these facts is that the Funds are

directly and adversely impacted by the illegal overcharges described in their complaint. These funds, plaintiffs argue, are the ultimately injured entities. The Court disagrees. The Court appreciates and understands the statutorily mandated, active role which the Counties play in the administration of the metropolitan sewer system. However, this alone is not evidence of injury.

■ The Counties have misconstrued the cause and effect of any dissipation of the Funds which they maintain. The plaintiffs determine the cost of maintaining their interceptor systems, add this to the charges of the City of Detroit, and send an aggregate bill to the municipalities. Any dissipation of the Funds is caused by the failure of the municipalities to pay their contractual obligations to the Counties. The Funds are not injured by the upstream actions of defendants herein; rather, they are injured by the downstream actions of the municipalities and end users. Perhaps a more proper cause of action, if the goal is to replete the Funds, would be a contractual one against the municipalities.

Another concern of this Court, as discussed in its first memorandum opinion, is that of duplicative recovery. The municipalities operate in the same manner as the Counties, i.e., they maintain segregated funds. If the situation were as plaintiffs posit, the municipalities' funds would similarly be dissipated. Thus, under plaintiffs' scheme, the municipalities could maintain a concurrent cause of action. Further, the end users' "funds" would likewise be dissipated. They, too, could presumably maintain an action. Thus, there is great potential for duplicative recovery.

The fact is that the end users, because they have no one to whom they can pass on their costs, are the ultimately injured party. The plaintiffs and municipalities are really no more than conduits between Detroit and the end users. It is the end users who must pay any alleged overcharges.

The plaintiffs argue that permitting them, rather than the municipalities or the end users, to bring suit will avoid the problems identified in *Hanover Shoe* and *Illinois Brick*. First, the Counties contend that it is easier for them to trace the alleged overcharges. However, the simple ability to trace the overcharges does not establish the crucial element—injury. Further, the records are just as available to the municipalities and, perhaps, to the end users, which would permit them to trace their overcharges. Second, plaintiffs contend that the individual end users do not have the same incentive, expertise, and resources to bring this action. However, the Supreme Court has, in a similar case, held just the opposite. In *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 266, 92 S.Ct. 885, 893, 31 L.Ed.2d 184 (1972), the Court stated:

> Congress has given private citizens rights of action for injunctive relief and damages for antitrust violations without regard to the amount in controversy. 28 U.S.C. § 1337; 15 U.S.C. § 15. Rule 23 of the Federal Rules of Civil Procedure provides for class actions that may enhance the efficacy of private actions by permitting citizens to combine their limited resources to achieve a more powerful litigation posture.... The fact that a successful antitrust suit for damages recovers not only the costs of the litigation, but also attorney's fees, should provide no scarcity of members of the Bar to aid prospective plaintiffs in bringing these suits.

This type of action, then, would install the actually injured parties as plaintiffs, would avoid duplicative recovery, eliminate tracing problems, and provide sufficient resources to maintain suit.

The Counties then argue that, in a sense, they are suing on behalf of the end users, who will benefit by plaintiffs' recovery. The Court has four responses. First, this argument is inconsistent with plaintiffs' contention that it is not a mere conduit for the municipalities and end users. Second, plaintiffs have maintained throughout the proceedings that they are not suing on behalf of the end users (*see* Memorandum on Behalf of Oakland County in Opposition

to the Motions to Dismiss Antitrust Counts, p. 6, fn. 1). Third, Congress has established that only a state, acting through its attorney general, may sue as *parens patriae* of its citizens. 15 U.S.C. § 15c(a)(1) (Supp.1983). Fourth, and most importantly, plaintiffs show no reason, and the Court sees no reason, why the end users would benefit by recovery by the Funds.

■ Oakland County then tries to argue that it itself is an end user of the sewage services and has standing to sue in that capacity. Paragraph 18 of the affidavit of Robert H. Fredericks II establishes that "Wastes from County buildings are discharged into municipal systems which are part of the three Districts. Oakland County pays the respective municipalities for their services just as any other user". The Court agrees that Oakland County would have standing to sue in this capacity. However, there are two problems. First, a fair reading of the Complaint shows that the Counties were not suing in this capacity, but were suing as administrators of the sewage system Funds. Second, if such an action were to be brought, the Counties would be limited to treble damages only for the alleged overcharges attributable to them as end users.

The Counties, in their motions to alter judgment, renew their argument that their "injuries" are redressable under *Hanover Shoe* and *Illinois Brick*. The Court adequately addressed this argument in its first opinion. To the extent new arguments are raised by plaintiffs, however, it will do so again.

■ Plaintiffs initially argued that the "pass-on" defense was inapplicable here. Now plaintiffs contend that there is no "pass-on" because, in effect, there is no resale. This is because the Counties, the municipalities, and the end users are really one party contracting with the City of Detroit. The absurdity of this argument is shown by *County of Oakland v. City of Berkley*, 742 F.2d 289 (6th Cir.1984), where the County sued Berkley to recover unpaid sewage funds. If, indeed, the parties are really one and there is no resale, why

would Oakland bring suit to recover Berkley's contractual obligations? Further, *Berkley* established that if a municipality does not pay its share, either the other municipalities or the City of Detroit, and not the Counties, pick up the slack. Thus, the plaintiffs' argument that they are one with the municipalities and end users fails. Also, it is inconsistent with the Counties' argument that they are not mere conduits.

Plaintiffs further argue that this case is identical to *Illinois Brick* and *Hanover Shoe* and that the "pass-on" defense should not apply for this reason. However, as this Court has previously pointed out, this case differs in two important respects. First, the fundamental reason for not allowing the "pass-on" defense is that the direct purchaser is injured even where he can "pass on" overcharges to an indirect purchaser. This is because he is "passing on" the overcharges at inflated prices, which, when supply and demand interact, reduces the demand for his product. Here, because plaintiffs are monopolies, supply and demand do not interact. Thus, they are uninjured by the alleged overcharges.

Second, the "cost plus" exception, as discussed in *Obron v. Union Camp Corporation*, 355 F.Supp. 902, 907 (E.D.Mich.1972), aff'd, 477 F.2d 542 (6th Cir.1973), is applicable here where it was not in *Hanover Shoe* and *Illinois Brick*. Here, the Counties take the cost of the Detroit charges, add that to the cost of maintaining their systems, and bill the municipalities. In essence, this is a pre-existing "cost plus cost" contract. The Counties have no incentive to absorb any overcharges. Thus, the Counties suffer no injury and lack standing. This is exactly the situation where the exception to *Hanover Shoe* and *Illinois Brick* for cost plus contracts should apply. In essence, plaintiffs are not initially injured and, thus, have no injury to "pass on". They simply serve as an intermediary between the municipalities and Detroit. Plaintiffs are not initially injured by any overcharges because it is not their obligation to pay them. They simply act as bill collectors for the City of Detroit. Thus,

either the municipalities or end users who must pay the bills or Detroit itself (which absorbs the charges when unpaid) are injured.

The cases cited by plaintiffs in support of their argument that the "pass-on" defense should not apply are easily distinguishable. In *City of Cleveland v. Cleveland Elec. Illum. Co.*, 538 F.Supp. 1320 (N.D.Ohio 1980), plaintiff, a City municipal utility that purchased electricity from defendant and sold it to citizens, was held to have standing to sue. The critical difference between that case and this case is that there, as that Court noted, the plaintiff City of Cleveland had an incentive to absorb part of the overcharge: its need to attract customers. *Id.* at 1324–25. Here, however, there is no such incentive because plaintiffs have monopolies. Thus, if they pass on inflated prices, they need not worry about losing business to other customers. Similarly, *Jewish Hospital Ass'n v. Stewart Mechan. Enterprises, Inc.*, 628 F.2d 971 (6th Cir. 1980), *cert. denied*, 450 U.S. 966, 101 S.Ct. 1483, 67 L.Ed.2d 615 (1981), was a case where, unlike here, the plaintiff had an incentive to absorb the overcharge. *Id.* at 975–77. In sum, the Court agrees that *Hanover Shoe* and *Illinois Brick* favor antitrust suits by the direct purchasers. However, this is a situation where such a presumption does not apply.

Plaintiffs' argument that *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972), authorizes a suit such as this (at p. 4 of Oakland's Reply Memorandum in Support of Motion to Alter Judgment) seriously misconstrues that case. *Hawaii* simply holds that § 4 of the Clayton Act authorizes a state to sue either in its proprietary capacity as a consumer in the marketplace or for injury to its general economy, but not both. *Id.* at 262–3, 92 S.Ct. at 891–92.

As discussed earlier in this opinion, plaintiffs are not suing in their proprietary capacity as consumers in the marketplace. If they were, their damages would be limited to the overcharge attributable to them as end users. Rather, plaintiffs are suing as administrators of the sewage system.

Further, plaintiffs are not suing for injury to their general economy. Plaintiffs have always maintained that they are not suing on behalf of their citizens and such *parens patriae* suits are limited to the states.

■■■ The Court must also clear up another misconception. Plaintiffs seem to be of the opinion that this Court found the municipalities were the proper party to bring suit. The issue of the municipalities' standing is not now, and has never been, before this Court. The Court has discussed the potential standing of other entities to show potential for duplicative recovery and to help show why the Counties do not have standing. It would be improper for the Court to rule on the standing of any party not before it. The Court also notes that Macomb County's request for the substitution of the municipalities for the counties pursuant to Fed.R.Civ.P. 17(a) is an improper use of that rule.

■■■ The Court also wishes to reiterate its discussion of *Southaven Land Co., Inc. v. Malone & Hyde, Inc.*, 715 F.2d 1079 (6th Cir.1983) where the court found the following factors relevant to determining antitrust standing:

(1) the causal connection between the antitrust violation and harm to the plaintiff and whether that harm was intended to be caused;

(2) the nature of the plaintiff's alleged injury including the status of the plaintiff as consumer or competitor in the relevant market;

(3) the directness or indirectness of the injury, and the related inquiry of whether the damages are speculative;

(4) the potential for duplicative recovery or complex apportionment of damages; and

(5) the existence of more direct victims of the alleged antitrust violation.

Relating these factors to the case at bar, it is clear that plaintiffs do not have standing:

(1) The cause of any harm to the plaintiff is the failure of the municipalities to replenish the funds. There is no allegation that any harm was intentional;

(2) Plaintiffs are not competitors in the relevant market. They are consumers only to the very limited extent of the fees they pay for end use;

(3) Any injury plaintiffs may suffer is indirect through the inability of the municipalities to pay their bills;

(4) There is great potential for duplicative recovery; and

(5) The municipalities and end users are more direct victims of any antitrust violations.

■ The Court wants to emphasize that it makes no finding whatsoever as to the existence of an antitrust violation. Further, the Court does not deny that the Counties play a very significant role in the administration of the metropolitan sewage system. However, plaintiffs have been unable to allege the existence of an antitrust injury. In a matter that involves the potential recovery of a substantial amount of damages, the Court feels that the party bringing suit, and potentially recovering, must be one injured by the alleged violations.

### RICO Claims

Plaintiffs also move to alter this Court's dismissal of their claims under RICO. The Court granted dismissal because plaintiffs did not allege the prerequisite of injury to have standing. RICO, and the issue of standing, have recently been addressed by the Supreme Court. In *Sedima, S.P.R.L. v. Imex Co.,* — U.S. ——, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (1985), the Court held:

... plaintiff only has standing if, and can recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.

■ There exists the requirement under RICO, as under the antitrust acts, that the plaintiff must suffer an injury by defendants' actions before it has standing to sue. Here, as discussed above and in the Court's original Memorandum Opinion, plaintiff simply has not been injured by defendants' conduct. Any injury the Counties suffer is a result of the municipalities not fulfilling their contractual obligations. Further, the relationships between the parties, as described in *Berkley* and by plaintiffs, establishes that any failure to pay by a municipality will result in the other municipalities or the City of Detroit picking up the slack. Thus, the Court does not find any possibility of injury to the Counties by defendants' conduct.

*Terre Du Lac Assoc., Inc. v. Terre Du Lac,* 772 F.2d 467 (8th Cir.1985) does not change this result. In *Terre Du Lac,* plaintiff was a property owners' association complaining about the costs of failing to maintain roads in a subdivision. The Court held that, in that case, plaintiff did not lack standing merely because it may pass its injuries on to its members. Certainly, the Court did not abandon the constitutional requirement of an injury in fact.

Further, *Terre Du Lac* is distinguishable. In that case, the Association suffered an injury and then passed the injury along to its members. Here, the Counties do not suffer an injury which can be passed along to the municipalities. Rather, the Counties serve as mere bill collectors for the City of Detroit. If they are unable to collect, the Counties do not suffer. Rather, any injuries resulting from defendants' conduct, either directly or indirectly, is borne by the municipalities and/or end users. Thus, the Counties suffer no injury which can be passed along.

An appropriate order, in accordance with this Memorandum Opinion, will be entered.